MARY E. ROBINSON v. NORTHWESTERN NATIONAL INSURANCE COMPANY.[1]

June 17, 1904.

Nos. 13,901—(136).

**Life Insurance—Notice of Death.**

Under a life insurance policy, notice of death was to be given in thirty days, and proofs thereof made, on blanks to be furnished by the insurer, in ninety days. Notice of death of insured, with a request for the blanks, was duly made. The insurer sent the same by mail, but they were not received. Upon a further demand for the blanks, they were again mailed, and reached the agent of the beneficiary, when they were properly filled out and returned to the company nine days after the ninety-day limit in the contract. *Held:*

1. That the obligation to furnish the blank forms was assumed by the insurer, which obligation could not be absolutely discharged by depositing them in the post office, properly stamped, and directed to the beneficiary or her agent, for that purpose.

2. That where, as in this case, the insurance contract requires proofs of death within a certain time to be returned on blanks furnished by the insurer, it is the duty of the latter to place the blanks in the hands of the beneficiary after proper request, and, if the mails are used for that purpose, this is at the sender's risk.

3. That it was properly left to the jury to determine, under the evidence, whether delays in complying with the request to send the blanks were unreasonable, and prevented the beneficiary from returning the same for nine days after the time limitation in the contract.

[1] Reported in 100 N. W. 226.

4. Evidence considered, and *held* to support the verdict, to the effect that the delay of the beneficiary was caused by the previous omissions and delays of defendant.

5. Certain special findings of the jury and alleged errors considered, and *held* immaterial.

Appeal by defendant from an order of the district court for Hennepin county, Pond, J., denying a motion for a new trial, after a trial and verdict in favor of plaintiff for $5,352.50. Affirmed.

*Brown & Kerr,* for appellant.

*Cohen, Atwater & Shaw, M. F. Hanley* and *Henry Curtis,* for respondent.

If the contract of insurance required proofs to be made within ninety days after the death of the insured, defendant waived that requirement by demanding claimant's return letter and by representing on the blanks a different time limit. McCarvel v. Phenix Ins. Co., 64 Minn. 193; Hamilton v. Liverpool, L. & G. Ins. Co., 136 U. S. 242; Illinois v. Baker, 153 Ill. 240; Bridges v. National Union, 73 Minn. 486; Mason v. St. Paul F. & M. Ins. Co., 82 Minn. 336.

It was defendant's duty under the by-laws to furnish the blanks for proofs in a reasonable time after demand therefor, and it assumed the risk of nonreceipt if it adopted any mode of furnishing them other than by personal delivery: Plath v. Minnesota F. M. F. Ins. Assn., 23 Minn. 479; Thorson v. St. Paul F. & M. Ins. Co., 32 Minn. 434; Benedict v. Grand Lodge A. O. U. W., 48 Minn. 471; Ault v. Interstate, 15 Wash. 627; American v. Heath, 29 Tex. Civ. App. 445; Gross v. Criss, 3 Gratt. 262; Morton v. Morris, 31 Ga. 378; Burr v. Sickles, 17 Ark. 428; Gurney v. Howe, 9 Gray (Mass.) 404.

LOVELY, J.

Action on a life insurance policy in favor of the widow of the insured policy holder. A verdict was returned for plaintiff. Motion for judgment or a new trial was denied. Defendant appeals.

The policy was issued by the Northern Life Association of Marshalltown, Iowa, and thereafter assumed by defendant. The defense relied solely upon the alleged failure of the beneficiary to furnish proofs of

death within the time limited by the terms of the application for insurance.

Several questions discussed on the argument here are not considered material, since we shall adopt the claim of the defendant that under the terms of the insurance contract the present defendant, whose general offices were at Minneapolis, was to be there notified in writing of the death of the insured within thirty days, and proofs of death to be forwarded within ninety days on blank forms to be furnished by the company to authorize recovery.

The policy holder, James F. Robinson, died at Rock Island, Illinois, on May 23, 1902. Plaintiff, his widow, held several policies of insurance on his life—among them, the one in suit. She intrusted the duty of making proofs of death to H. E. Casteel, cashier of the Rock Island National Bank, of which the insured had been president, Mrs. Robinson herself giving no personal attention to the matter in this or similar cases. Within the proper time, June 19, Casteel wrote defendant, at Minneapolis, asking for the blanks to be used in furnishing the proofs. June 20, defendant sent Casteel a letter asking answers to a number of questions, and insisting on plaintiff's signature to a waiver in the following terms:

> It is further agreed and understood that the sending of blank proofs of loss shall not be deemed a recognition by the association of any rights of the claimant, nor shall the same be or constitute a waiver of the rights of the Association to the making of as full and complete a defense as if such blank proofs be not sent.

June 24 defendant received claimant's reply, in which the questions were answered, but the waiver was not signed, Casteel then made a second request for the requisite blanks. Defendant claims to have mailed the proper forms in response June 24, but they were never received by Casteel or the beneficiary. July 24, sixty one days after the death of the insured, Casteel again sent defendant a letter requesting the blanks, inclosing information desired in defendant's first request, with the qualification in the waiver clause to the effect that no misstatements, wilfully or knowingly, had been made. July 26 the blank forms were again mailed by defendant to Casteel, and received by the

latter July 27, sixty four days after the death of insured. August 26 the proofs of death were completed by the beneficiary and mailed to defendant, who received them at its Minneapolis office the following day. September 6 defendant returned the proofs, and denied liability upon the ground that they were received too late.

For the purposes of this case, we shall adopt the view that the proofs of death were forwarded by the beneficiary later than the time required in the contract by at least nine days, and the important question remains to be determined whether the delay of the beneficiary was excused by the laches or omissions of the defendant in furnishing the blank forms requested by plaintiff's agent.

The jury were, in substance, instructed by the trial court that, under the stipulations in the policy, defendant, upon receiving notice of the death of the insured, was to use reasonable diligence in furnishing the beneficiary or her agent proper blank forms upon which to make proofs of death; that, under the policy, which provided that proofs should be made out upon forms to be furnished by the insurer, it was incumbent on defendant to do more than inclose such blanks in an envelope duly addressed and properly stamped, and to deposit the same in the post office at Minneapolis, but it must actually deliver such forms to the plaintiff or her agent, using all reasonable diligence to accomplish that end. Further that, upon receipt by defendant of notice of the death of the insured on or before June 23, it did, in compliance with a request for the blanks, mail the same to plaintiff, but that such forms were never received by the beneficiary or her agent.

With reference to the further request of plaintiff's agent for blank forms, the court instructed the jury that, in compliance therewith, defendant had forwarded to Casteel, for plaintiff, blank forms, for the purpose of enabling her to make out proofs of her husband's death, which were in fact received by such agent on July 25 or 26, whereby it appeared that thirty days or more elapsed between the time when plaintiff, through her agent, requested the same, and the time when they were in fact actually received; and it was left to the jury to determine whether the defendant unreasonably delayed for a period equal to the time elapsing between the expiration of the ninety-day limitation, on August 21, and the date when the plaintiff actually returned the proofs of death, in placing the forms in her hands after her request so to do;

holding in effect that, if any unreasonable delay in this respect occurred, it would inure to plaintiff's benefit.

In addition to the general verdict returned for plaintiff, the court submitted the following questions:

> 1. Was the defendant insurance company guilty of unreasonable delay of nine days or more, in furnishing to plaintiff blank forms for proof of death? To which the jury answered, Yes.
>
> 2. If you answer No. 1 in the affirmative (that is, answer it Yes), then did plaintiff use reasonable diligence in furnishing proofs of death of the said James F. Robinson, under all the circumstances in the case? To which the jury answered, Yes.

It is claimed that the instructions referred to were erroneous, for the reason that, by the transmission of the blanks through the mails previous to June 24, defendant complied with its duty under the terms of the policy; and again that, upon the facts showing what was done after the blanks were actually received by plaintiff's agent, there was in fact still remaining reasonable time on her part within which to make out and return the proofs of death within the ninety-day limit. We are hence required to construe the provision in the insurance contract which imposes on the beneficiary the obligation (1) to return the proofs upon forms "to be furnished" by the defendant within the prescribed time; and (2) whether defendant had fully complied with its duty to furnish the blanks by sending them through the mails, without reference to their actual delivery or receipt by the agent of the beneficiary.

We have no trouble in reaching the conclusion that the plaintiff had the right to demand the forms, in order to comply with her obligation to furnish the required proofs of death. This was exacted by the defendant by the terms of the contract, and, if the use of the mails to furnish them was a sufficient compliance with its duty in this respect, the court's instruction to the effect that such proofs were required to be delivered to the beneficiary was erroneous. The fair import of the condition that the proofs should be prepared on blanks "to be furnished" by the company would seem to be sufficiently clear. The necessity of having such proofs made in accordance with reasonable requirements of the defendant is obvious, since it had a right to be apprised of reasonably accurate and reliable information to enable it to act advisedly

and with proper knowledge upon the death of insured, before payment of the indemnity provided for in the policy; hence the furnishing of its own forms, which it insisted should be used, was for the benefit of the defendant primarily, and the plaintiff being thus restricted in using such forms justified a reasonable opportunity by her to prepare and return the same. While the obligation to pay the indemnity depended upon formal proofs to establish the death, the beneficiary would have the right for that reason to say that the furnishing of the blanks was conditional to her use of them to fix its liability absolutely, and it would seem only just and reasonable that this requirement of the company should not be exacted unless it adopted sufficiently efficient means to place the blanks it required to be used in her hands for that purpose. To say that the company could deposit such forms in the post office, properly mailed, and thus be said to have furnished them absolutely, without reference to their receipt by the person for whom intended, omits the possible contingency that they might never reach their destination, which would impose the hardship of a possible forfeiture of the rights of the beneficiary.

In Plath v. Minnesota F. M. F. Ins. Assn., 23 Minn. 479, where there was insurance against fire, it was held, with reference to the necessity of giving notice by the mortgagor to the insured by the mailing of information thereof, that, while insured was unrestricted in the choice and means of giving it, and might send the same by mail, the risk was wholly his, and not the insurer's, and, if the mails were used for this purpose, nothing less than actual reception by the company of the information required by the policy could satisfy the contract.

In Thorson v. St. Paul F. & M. Ins. Co., 32 Minn. 434, 21 N. W. 471, it was held that notice of appeal sent by mail to the clerk of the district court was not alone sufficient (it appearing from the clerk's affidavit that he did not receive the notice in proper time), since the law did not permit service by mail on the clerk.

In Benedict v. Grand Lodge A. O. U. W., 48 Minn. 471, 51 N. W. 371, where by the constitution of a benefit society it was provided that notice should be sent to members, it was held that sending the same by mail was insufficient, unless the notice was in fact received.

In Alworth v. Gordon, 81 Minn. 445, 84 N. W. 454, where service of a notice to quit on a tenant was required to terminate the tenancy,

we held that, while it was impracticable to lay down a specific rule as to manner of serving such notice, yet that any means of doing this was sufficient, when it could be traced to the hands of the party for whom it was intended in due time; that, while the plaintiff was not authorized to serve the same by mail, so as to cast upon the adverse party the risk of receiving it, yet, if the notice was delivered to and received by him within the required time, it was sufficient.

The condition to use the forms furnished by the company being made a prerequisite and an essential necessity to proper proofs by the beneficiary to secure the indemnity, the duty to furnish them by the company was more than merely formal. This being so, there are sound and substantial reasons, in justice, upon manifest principles of equity and right, for it to see that they were placed in her hands—quite as much so as in any of the cases above referred to, wherein duties of the same nature are enjoined.

We cannot hold that an insurance company might be allowed to make its indemnity depend upon furnishing proofs of death or loss, requiring such proofs to be returned upon prescribed blanks, which it undertakes to furnish, and also absolve itself from liability by showing merely that it has forwarded the blanks by mail, irrespective of their receipt by the person to whom they were directed. To so hold would involve the beneficiary in risks and hazards not contemplated in the purpose of the indemnity contract itself, unnecessary to a proper protection of the rights of the insurer, and affording temptation to fraud and negligence which ought not, upon principles of justice and equity, to be tolerated.

The obligation to furnish the blanks, assumed by the defendant in this case, could not, therefore, be discharged upon evidence merely that it adopted the agency of the mails to relieve it of that duty, without showing further that such blanks came to the hands of the beneficiary or her agent; and it follows that the instructions of the trial court that the evidence, establishing the fact that the blank forms were not received in fact until thirty days or more after the demand therefor, might be taken into consideration in determining whether the time fixed for the return of the proofs afforded a reasonable opportunity to forward them on the blanks prescribed and furnished to the agent of the beneficiary before the ninety-day limitation expired.

92 M.—25

Whether the evidence reasonably tended to show that the delay in furnishing the blank forms was unreasonable, to the extent of nine days after the ninety-day limit, as affirmatively found by the jury, we think, under the evidence, was a question of fact. By the terms of the policy, thirty days were provided for as a time within which notice of death is to be given, leaving sixty days within which the blanks are to be furnished. These blanks and requirements provided for an affidavit of claimant which would show, among other things, the date and place of decedent's birth; causes of death; duration of last illness; remote causes of death; various occupations of deceased; information as to when and where he had traveled; changes of residence; name and residence of every physician that had prescribed for him; knowledge or information of treatment of different diseases with which he had been previously afflicted; full family history; and information as to former applications for insurance. A clergyman's affidavit was required, containing specific information of certain facts. Also a physician's affidavit, with full information therein of the clinical history of decedent's previous ailments, and other technical information.

It is very obvious, in reading these requirements of the company, that considerable time might be consumed in obtaining the information therein demanded; but in addition to the affidavits required was one to be obtained from the undertaker in charge of decedent's burial, who in this case, as appears, was ill when the blanks were received, and confined to his house, and for this reason it was not procured until the day before the blanks, properly filled out, were returned. We are satisfied, from an examination of the requirements of these formal proofs required by the company in connection with other evidence, that there were sufficient grounds for the conclusion reached by the jury, upon the issues submitted, that the delay of the defendant in furnishing the blanks was unreasonable, to the extent of the time indicated beyond the limitation of the insurance contract of the defendant, supporting the special finding in that regard, and sustained the recovery of plaintiff.

It becomes unnecessary to pass upon assignments based upon the submission of the question whether the defendant, after receiving the proofs, retained them an unreasonable and unnecessary length of time, for the reason that under the verdict the proofs must be considered as having been legally made.

Defendant assigned error in permitting the beneficiary and her agent, Casteel, to state when they first learned that the ninety-day limitation was a part of the insurance contract. If it might be prejudicial to have permitted the knowledge of the beneficiary that the ninety-day limit was a part of the insurance contract, under any view of the facts contended for, it was of no practical importance in this case, since, by the theory upon which the cause was submitted, the plaintiff was bound to observe and act upon the duty to furnish the proofs within the ninety-day limit, unless prevented from doing so by the unreasonable delays of defendant.

The clerks of the bank of which Casteel was cashier were allowed to give evidence regarding the receipt and delivery of letters, to show that there was no negligence in that respect. This was objected to, but since, as we regard it, the submission and special findings of the jury are based upon the uncontroverted fact as to when the blanks were in fact received, the admission of this evidence was harmless.

In a letter sent to the secretary of the company previous to the final demand for the blanks which were actually furnished and received it was sought to show the understanding of the secretary whether by its terms it authorized the company to assume that the blanks might be furnished by mail. This offer was excluded, and we think properly so. It was the duty of the company, as we have held, to furnish the blanks, and, at its risk, to see that they were placed in the hands of the beneficiary; hence the request to send them did not change the relations between the parties, nor the obligations of either. Defendant rested upon the strict interpretation of the contract which imposed duties with which it must comply at its own risk; and the request to send blanks, without designating the mails as the proper agency, did not change the duty enjoined on defendant in this respect.

Order affirmed.