IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

DON C. ROBERTSON, AS SUCCESSOR TRUSTEE OF THE VIOLA I. ROBERTSON
TRUST DATED OCTOBER 1, 2009; CHARLOTTE G. HARDY AS SUCCESSOR
TRUSTEE OF THE VIOLA I. ROBERTSON TRUST DATED OCTOBER 1, 2009;
JAMES H. HARDY AND CHARLOTTE G. HARDY, HUSBAND AND WIFE; BONITA
SUE ESCOBEDO AND JAMES D. SUMPTER, AS SUCCESSOR TRUSTEES OF THE
SUMPTER TRUST; W. MICHAEL ADDINGTON AND CHERYL ADDINGTON,
HUSBAND AND WIFE AND TRUSTEES OF THE W. MICHAEL AND CHERYL
ADDINGTON TRUST,
*Plaintiffs/Appellees,*

*v.*

ROBERT E. ALLING AND JACQUELINE R. ALLING, INDIVIDUALLY AND AS
HUSBAND AND WIFE; MELISSA L. MOORE, INDIVIDUALLY; DOYLE K.
WARNER AND DEANNA K. WARNER, INDIVIDUALLY AND AS HUSBAND AND
WIFE; HARRY L. VIEZENS AND MARCIA L. VIEZENS, INDIVIDUALLY AND AS
HUSBAND AND WIFE AND AS TRUSTEES OF THE VIEZENS TRUST; FREDERICK
AND CALISTA WASHBURN, INDIVIDUALLY AND AS HUSBAND AND WIFE;
MGF FUNDING, INC., AN ARIZONA CORPORATION; BRIAN A. MORTENSEN
AND OXANA MORTENSEN, INDIVIDUALLY AND AS HUSBAND AND WIFE;
ROBERT R. HICKS AND NICOLE HICKS, INDIVIDUALLY AND AS HUSBAND
AND WIFE; KARL F. KOHLHOFF AND JOAN M. KOHLHOFF, INDIVIDUALLY
AND AS HUSBAND AND WIFE AND AS TRUSTEES OF THE KOHLHOFF FAMILY
TRUST; WILLIAM D. LAWRENCE, INDIVIDUALLY; LAWRENCE PROPERTIES, A
GENERAL PARTNERSHIP; WILLIAM GLAUNSINGER AND LORNA
GLAUNSINGER, INDIVIDUALLY AND AS HUSBAND AND WIFE; THOMAS
GRAHAM AND REGINA GRAHAM, INDIVIDUALLY AND AS HUSBAND AND
WIFE; GRAHAM HOMES, LLC, AN ARIZONA LIMITED LIABILITY COMPANY;
GERALD L. GRAHAM, INDIVIDUALLY AND AS TRUSTEE OF THE GRAHAM
FAMILY TRUST, AND VELMA GRAHAM, HIS WIFE,
*Defendants/Appellants.*

No. CV-14-0246-PR
Filed June 24, 2015

Appeal from the Superior Court in Gila County
The Honorable Peter J. Cahill, Judge
No. CV2011-00165
**AFFIRMED**

Opinion of the Court of Appeals, Division Two
235 Ariz. 329, 332 P.3d 76 (App. 2014)
**VACATED**

_____

COUNSEL:

Noel Fidel (argued), Law Office of Noel Fidel, Phoenix; Robert Grasso, Jr., and Jenny J. Winkler, Grasso Law Firm, P.C., Chandler, Attorneys for Don C. Robertson, et al.

Russell A. Kolsrud (argued) and Mark S. Sifferman, Clark Hill PLC, Scottsdale, Attorneys for Robert E. Alling, et al.

Stanley G. Feldman, Haralson, Miller, Pitt, Feldman & McAnally, P.L.C., Tucson, and David L. Abney, Knapp & Roberts, P.C., Scottsdale, for Amici Curiae Arizona Association for Justice/Arizona Trial Lawyers Association

_____

JUSTICE TIMMER authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER and JUSTICES BERCH and BRUTINEL joined.

JUSTICE TIMMER, opinion of the Court:

¶1        Agreements between parties or attorneys in civil lawsuits are not binding if disputed unless they are evidenced by a writing or made orally in court.  Ariz. R. Civ. P. 80(d).  We here consider whether Rule 80(d) makes a written settlement agreement unenforceable because it lacked the written assent of clients who dispute their attorney's authority to make the agreement.  Holding that no such written assent is required and that the agreement here satisfied Rule 80(d), we also conclude that it is enforceable because the attorney acted within the apparent authority given by his clients.

## I.  BACKGROUND

¶2        Petitioners ("the Robertson Group") sued neighboring property owners ("the Alling Group") concerning a water line.  On January 29, 2013, the parties and their attorneys attended a mediation but did not reach an agreement.  At the end of the mediation, the Alling Group,

2

represented by attorney Mark Sifferman, made a settlement offer requiring acceptance within forty-eight hours.[1]  Hours before the offer expired, Robert Grasso, the Robertson Group's attorney, told Sifferman that the Robertson Group needed more time to respond to the offer because one group member had a family emergency.  Grasso proposed that the attorneys discuss the offer the next week.  Sifferman did not extend the January 31 deadline, and the offer expired.

¶3        Sifferman advised his clients of Grasso's request and recommended they "leave the door open" for settlement.  Two of the Alling Group members emailed Sifferman on February 4 stating that they and others favored "removing the settlement offer proposed in the mediation." But Sifferman did not read the email and mistakenly thought all his clients were willing to settle on the terms previously conveyed to the Robertson Group.

¶4        On February 6, after talking with another attorney at Grasso's law firm, Sifferman sent that attorney an email extending a new settlement offer with terms that mirrored the prior offer but would expire at 5:00 p.m. on February 8.  Grasso timely accepted the offer via email.  Later, after Grasso's law firm had informed the trial court of the settlement (the "February 8 settlement") and circulated draft settlement documents, Sifferman discovered he had lacked authority to extend the settlement offer. After conferring with his clients, Sifferman made a new settlement offer, which materially varied from the February 8 settlement.

¶5        The Robertson Group moved to enforce the February 8 settlement.  Without an evidentiary hearing, the trial court granted the motion, ruling that Sifferman had actual and apparent authority to extend the settlement offer and, alternatively, that the Alling Group was equitably estopped from disputing that authority.  The court also ruled that Arizona Rule of Civil Procedure 80(d) did not apply but, if it did, the emails exchanged between counsel satisfied the rule.

¶6        The court of appeals reversed. *Robertson v. Alling*, 235 Ariz. 329, 339 ¶ 38, 332 P.3d 76, 86 (App. 2014).  After finding that a dispute

---

[1]    Another attorney represented one member of the Alling Group. That member is not a party here, and the acts of that member and her attorney are not at issue.

existed concerning Sifferman's authority to enter into the February 8 settlement, the court concluded that this dispute triggered Rule 80(d). *Id.* at 333 ¶ 10, 332 P.3d at 80. "Because the [Alling Group's] assent to the contract is not in writing," the court reasoned, "the requirements of Rule 80(d) were not met, and the agreement is unenforceable as a matter of law." *Id.* The court remanded for the trial court to determine whether the Alling Group is equitably estopped from opposing enforcement of the February 8 settlement. *Id.* at 339 ¶ 37, 332 P.3d at 86.

**¶7** We granted review to decide whether Rule 80(d) applies when an attorney's authority to settle is challenged and to provide guidance on apparent authority, both recurring issues of statewide importance. We have jurisdiction pursuant to Article 6, Section 5 of the Arizona Constitution.

## II. DISCUSSION

**¶8** Because the trial court effectively granted summary judgment regarding the existence, terms, and enforceability of the parties' settlement agreement, we employ the summary judgment standard of review. *See Perry v. Ronan*, 225 Ariz. 49, 52 ¶ 7, 234 P.3d 617, 620 (App. 2010). Accordingly, we determine de novo whether any genuine disputes of material fact exist and whether the trial court correctly applied the law, viewing the facts in the light most favorable to the Alling Group as the non-prevailing party. *See* Ariz. R. Civ. P. 56(a); *BMO Harris Bank, N.A. v. Wildwood Creek Ranch, LLC*, 236 Ariz. 363, 365 ¶ 7, 340 P.3d 1071, 1073 (2015).

### A. Rule 80(d)

**¶9** Rule 80(d) provides that "[n]o agreement or consent between parties or attorneys in any matter is binding if disputed, unless it is in writing, or made orally in open court, and entered in the minutes." The issue before us is whether the rule requires a writing reflecting a client's assent to a written agreement when the client disputes its attorney's authority to make the agreement.

**¶10** We interpret court rules to effect the drafters' intent. *State v. Salazar-Mercado*, 234 Ariz. 590, 592 ¶ 4, 325 P.3d 996, 998 (2014). When a rule's language is unambiguous, we apply it as written. *Id.* If the language is ambiguous, we apply secondary principles of construction, such as

4

examining the rule's spirit and purpose as well as the effects and consequences of differing interpretations. *Id.*

¶11    The Robertson Group relies on *Hays v. Fischer* as support for its argument that Rule 80(d) applies only if "the existence of the settlement agreement and its terms are . . . in dispute" and not when the client disputes whether it is bound by the settlement agreement. 161 Ariz. 159, 166, 777 P.2d 222, 229 (App. 1989); *see also Perry*, 225 Ariz. at 54 ¶¶ 17–18, 234 P.3d at 622 (holding that Rule 80(d) does not apply because the client "only disputes whether he is bound to the settlement agreement; the agreement's existence and terms are not in dispute"). That group asserts that the Alling Group does not dispute the existence or terms of the February 8 settlement, but only contests whether it is bound by the agreement, and, therefore, Rule 80(d) does not apply.

¶12    Like the court of appeals, *see Robertson*, 235 Ariz. at 338 ¶¶ 31–32, 332 P.3d at 85, the Alling Group relies on *Canyon Contracting Co. v. Tohono O'Odham Housing Authority*, which held that if an attorney's settlement authority is disputed, Rule 80(d) requires a written manifestation of the client's assent to the agreement. 172 Ariz. 389, 393, 837 P.2d 750, 754 (App. 1992). In *Canyon Contracting*, the court reasoned that this construction of Rule 80(d) furthers the rule's "policy of avoiding difficult issues of proof." *Id.*

¶13    We agree with the Robertson Group. Rule 80(d) serves to avoid collateral disputes between parties by requiring written evidence of any stipulations and agreements. *Cf. Hackin v. Rupp*, 9 Ariz. App. 354, 355–56, 452 P.2d 519, 520–21 (1969) (stating that most jurisdictions have adopted similar rules to "prevent fraudulent claims of oral stipulations, and to prevent disputes as to the existence and terms of agreements and to relieve the court of the necessity of determining such disputes" (quoting 83 C.J.S. Stipulations § 4 (1969)) (internal quotation marks omitted)). If parties do not dispute the existence or terms of an agreement, no purpose is served by applying Rule 80(d). Whether the agreement is in writing does not resolve whether the lawyer was authorized to bind the client. Because the parties here do not dispute the existence and terms of the February 8 settlement, Rule 80(d) does not apply.

¶14    But even if Rule 80(d) applies, the attorneys' exchange of emails satisfied the rule. Nothing requires clients to separately assent in

writing to a written agreement brokered by their attorney. Construing Rule 80(d) to require the client's assent when the client disputes its attorney's authority would abrogate the apparent authority doctrine in the attorney-client context. Our courts have long recognized that attorneys can bind clients who have cloaked them with apparent authority to act on their behalf. *See, e.g.*, *Panzino v. City of Phoenix*, 196 Ariz. 442, 447 ¶ 17, 999 P.2d 198, 203 (2000); *Ariz. Title Ins. & Trust Co. v. Pace*, 8 Ariz. App. 269, 271–72, 445 P.2d 471, 473–74 (1968). Because apparent authority is invoked in the *absence* of an express written manifestation of client assent, and generally turns on factual disputes, *see Goodman v. Physical Res. Eng'g, Inc.*, 229 Ariz. 25, 29 ¶ 12, 270 P.3d 852, 856 (App. 2011), the Alling Group's interpretation would eliminate application of the apparent authority doctrine to an attorney's acts. And, because Rule 80(d) applies to numerous stipulations and agreements, this interpretation could cast doubt on agreements reached between attorneys to resolve discovery disputes and other routine matters. Neither Rule 80(d)'s text nor purpose suggests that the drafters intended this result. *Cf. Mustang Equip., Inc. v. Welch*, 115 Ariz. 206, 211, 564 P.2d 895, 900 (1977) ("It has always been the policy of the law to favor and encourage the resolution of controversies through compromise and settlement rather than through litigation.").

**¶15** We endorse the holding in *Hays* that Rule 80(d) applies only when parties dispute the existence or terms of an agreement, as distinct from other challenges to its enforceability. If such a dispute exists, the rule can by satisfied by writings exchanged between counsel. Rule 80(d) does not require the client's written assent to the agreement. We disapprove *Canyon Contracting* insofar as it reached a different conclusion. Because the parties do not dispute the existence or terms of the February 8 settlement, Rule 80(d) does not preclude its enforcement.

## B. Apparent Authority

**¶16** The relationship between an attorney and client is governed by agency law principles. *See Panzino*, 196 Ariz. at 447 ¶ 17, 999 P.2d at 203. The Robertson Group concedes, contrary to the trial court's ruling, that Sifferman lacked actual authority to enter into the February 8 settlement. It argues, however, that Sifferman had apparent authority to bind the Alling Group to that agreement.

¶17 An attorney without actual authority to settle a dispute can nevertheless do so if the other party to the agreement "reasonably assumes that the lawyer is authorized to do the act on the basis of the client's (and not the lawyer's) manifestation of such authorization." Restatement (Third) of Law Governing Lawyers § 27; Restatement (Third) of Agency § 3.03 (to same effect). The client "manifests assent or intention through written or spoken words or other conduct." Restatement (Third) of Agency § 1.03. That the client has retained an attorney does not establish apparent authority to settle a dispute. *See United Liquor Co. v. Stephenson*, 84 Ariz. 1, 3, 322 P.2d 886, 887 (1968). The party seeking to enforce the settlement bears the burden of showing that its reliance on the attorney's apparent authority was reasonable. *See Miller v. Mason-McDuffie Co. of S. Cal.*, 153 Ariz. 585, 590, 739 P.2d 806, 811 (1987).

¶18 The undisputed facts establish Sifferman's apparent authority to bind the Alling Group to the February 8 settlement. At the end of the mediation, all members of the Alling Group, after consulting with their attorneys, offered, through the mediator, to settle the lawsuit on specified terms. The attorneys for each side, at the mediator's suggestion, immediately met without their clients to "hash out" the settlement terms. At Grasso's request, Sifferman agreed to leave the offer open for forty-eight hours to enable Grasso to expedite discussions with the Robertson Group's insurers concerning payment of the group's attorney fees. Although the deadline initially requested by Grasso expired, Sifferman confirmed days later that the offer remained available on the same terms, and the Robertson Group accepted it.

¶19 By extending a settlement offer and then leaving Sifferman to finalize the timing and terms, the Alling Group manifested its intention that Sifferman was empowered to conclude the settlement on the terms approved by the Alling Group. The forty-eight-hour deadline was not part of the offer extended by the Alling Group. Rather, Grasso requested the deadline for the benefit of the Robertson Group, Sifferman agreed to it without consulting the Alling Group, and nothing suggested that the deadline was material to the Alling Group. Without a deadline, the offer would have expired after a reasonable time period, unless revoked. 1 Williston on Contracts § 5:2 (4th ed.) (2015). By initially granting Grasso's request for a forty-eight-hour deadline and then effectively extending the offer as "still open" days after the deadline expired, Sifferman acted within his apparent authority to complete the settlement on the terms agreed to by

the Alling Group. *Cf.* Restatement (Third) of Law Governing Lawyers § 21(3) (stating that absent client instruction or agreement, "a lawyer may take any lawful measure within the scope of representation that is reasonably calculated to advance a client's objectives as defined by the client").

¶20   In sum, we hold that the Alling Group's actions allowed the Robertson Group to reasonably assume that Sifferman had authority to keep a settlement offer on the table or reoffer the same settlement terms days after the agreement's expiration, and the Robertson Group reasonably relied on the attorney's apparent authority. Therefore, we agree with the trial court that the settlement agreement is binding on the Alling Group.

### C. Attorney Fees

¶21   The Robertson Group requests attorney fees pursuant to A.R.S. § 12-341.01, which gives courts discretion to award fees "[i]n any contested action arising out of a contract." Because enforcement of the February 8 settlement is such an action, we award the Robertson Group its reasonable attorney fees expended on appeal upon its compliance with ARCAP 21(b).

### III. CONCLUSION

¶22   Rule 80(d) applies only if a party disputes the existence or terms of an agreement. If such a dispute exists, the rule can be satisfied by writings exchanged by counsel. Rule 80(d) does not also require the written assent of a client who disputes that it is bound by the agreement. Because the parties here do not dispute the existence or terms of the February 8 settlement, Rule 80(d) does not apply. Finally, because the evidence shows that Sifferman was cloaked with apparent authority to bind the Alling Group to the February 8 settlement, the trial court correctly enforced the agreement. We vacate the court of appeals' opinion, affirm the trial court's judgment, and award the Robertson Group its reasonable attorney fees on appeal.